1

2

3

4               **UNITED STATES DISTRICT COURT**

5              **NORTHERN DISTRICT OF CALIFORNIA**

6                     **SAN JOSE DIVISION**

7

8    LANCE P.,                        Case No.  22-cv-09144-BLF

9              Plaintiff,             **ORDER GRANTING PLAINTIFF'S**
                                      **MOTION FOR SUMMARY JUDGMENT;**
10       v.                           **DENYING DEFENDANT'S CROSS-**
                                      **MOTION FOR SUMMARY JUDGMENT;**
11   KILOLO KIJAKAZI, Acting          **REVERSING THE COMMISSIONER'S**
     Commissioner of Social Security, **DECISION; AND REMANDING FOR**
12                                    **PAYMENT OF BENEFITS**
              Defendant.
13                                    [Re:  ECF 16, 22]

14

15

16        This lawsuit follows two rounds of administrative proceedings on Plaintiff Lance P.'s

17   application for disability insurance benefits under Title II of the Social Security Act.  In the first

18   round, an administrative law judge ("ALJ") issued a partially favorable and partially unfavorable

19   decision, finding that Plaintiff became disabled on September 27, 2017, but was not disabled for

20   the prior twenty-two month period from his amended alleged onset date of November 15, 2015

21   through September 26, 2017.  Admin. Record ("AR") 636-45, ECF 11.  That decision was

22   affirmed by the Appeals Council and by this Court.  *See Lance P. v. Saul*, 19-cv-04003-BLF.

23   While Plaintiff's appeal to the Ninth Circuit was pending, the parties stipulated that the matter

24   should be remanded to the Commissioner for further proceedings.  *Id.*

25        On remand, the Appeals Council vacated the first ALJ's decision and assigned the matter

26   to a second ALJ for a determination whether Plaintiff was disabled from November 15, 2015

27   through September 26, 2017.  AR 505-06.  The second ALJ found that Plaintiff was not disabled

28   during that period and the Appeals Council affirmed, making the second ALJ's decision the final

decision of the Commissioner. *Id*. 1-6. Plaintiff thereafter filed the present action, asking this Court to reverse the denial of benefits for the period November 15, 2015 through September 26, 2017, and to remand for immediate payment of benefits or for further administrative proceedings. Compl., ECF 1.

The parties' cross-motions for summary judgment have been fully briefed, and the matter is deemed submitted without oral argument pursuant to Civil Local Rule 16-5. For the reasons discussed below, Plaintiff's motion for summary judgment is GRANTED; Defendant's cross-motion for summary judgment is DENIED; the Commissioner's decision is REVERSED; and the case is REMANDED for payment of benefits.

## I.    BACKGROUND

Plaintiff was born on September 27, 1962. AR 517. His highest level of education was 11th grade; he did not obtain a high school diploma. *Id*. 531. Plaintiff has past relevant work as a warehouse worker, stocking shelves at a distribution center. *Id*. 531-32. Plaintiff does not have any work-related licenses. *Id*.

*First ALJ Decision (June 8, 2018)*

Plaintiff filed an application for disability insurance benefits on September 14, 2016, alleging that he was disabled due to a number of impairments, including degenerative conditions of his left foot and spine, both causing pain and limiting his ability to stand, walk and to sit. AR 636-40. Plaintiff initially alleged a disability onset date of June 1, 2014, but later amended the alleged onset date to November 15, 2015. AR 636. An ALJ issued a partially favorable written decision on June 8, 2018, finding that Plaintiff was not disabled from his amended alleged onset date of November 15, 2015 through September 26, 2017, but became disabled on September 27, 2017. *Id*. 636-45.

At step one of the five-step sequential analysis,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of November 15, 2015. AR 638. At step two, the ALJ found that Plaintiff had severe impairments. *Id*. 638-39. At

---

[1] When determining disability, an ALJ is required to employ a five-step sequential analysis, as discussed below. *See Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014).

United States District Court
Northern District of California

United States District Court
Northern District of California

step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments in the regulations. *Id.* 639. Prior to step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain limitations. *Id.* 640-41. At step four, the ALJ found that Plaintiff had been unable to perform his past relevant work as a warehouse worker since the amended alleged onset date. *Id.* 642-43.

At step five, the ALJ found that prior to Plaintiff's 55th birthday on September 27, 2017, Plaintiff was "an individual closely approaching advanced age." AR 643-45. Based on that age category and Plaintiff's RFC, the ALJ determined that Plaintiff was not disabled from his amended alleged onset date of November 15, 2015 through September 26, 2017. *Id.* However, the ALJ found that Plaintiff became disabled on September 27, 2017, when he turned 55 and his age category changed to "an individual of advanced age." *Id.*

The Appeals Council denied Plaintiff's appeal of the unfavorable portion of the ALJ's decision. AR 624-26. Plaintiff sought district court review, and this Court affirmed the ALJ's decision. *See Lance P. v. Saul*, 19-cv-04003-BLF. Plaintiff's appeal to the Ninth Circuit was cut short by the parties' stipulation that the matter should be remanded to the Commissioner for further proceedings. *Id.* The Ninth Circuit remanded the case to this Court, which remanded it to the Appeals Council, which vacated the first ALJ's decision and assigned the matter to a different ALJ. AR 505-06.

*Second ALJ Decision (October 21, 2022)*

The second ALJ's sole task was to determine whether Plaintiff was entitled to benefits for the period from his amended alleged onset date of November 15, 2015 through September 26, 2017. *Id.* 505-06. The ALJ conducted an administrative hearing on September 20, 2022, at which time he accepted all proffered documents into the record and heard from Plaintiff and a Vocational Expert ("VE"). AR 526-59. The ALJ issued an unfavorable written decision on October 21, 2022, finding that Plaintiff was not disabled from November 15, 2015 through September 26, 2017. *Id.* 505-19. The Appeals Council denied Plaintiff's administrative appeal, making the second ALJ's decision the final decision of the Commissioner. *Id.* 1-6. Plaintiff now seeks review of that decision.

3

United States District Court
Northern District of California

## II.    LEGAL STANDARD

### A.    Standard of Review

Pursuant to sentence four of 42 U.S.C. § 405(g), district courts "have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 USC § 405(g).  However, "a federal court's review of Social Security determinations is quite limited."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). Federal courts "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.'"  *Id.* (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014)).

A court "will disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error."  *Brown-Hunter*, 806 F.3d at 492 (quotation marks and citation omitted).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance."  *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) (quotation marks and citations omitted).  A court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  *Id.* (quotation marks and citation omitted).  If the evidence is susceptible to more than one rational interpretation, the ALJ's findings must be upheld if supported by reasonable inferences drawn from the record.  *Id.*

Finally, even when the ALJ commits legal error, the ALJ's decision will be upheld so long as the error is harmless.  *See Brown-Hunter*, 806 F.3d at 492.  However, "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless."  *Id.*  The court is "constrained to review the reasons the ALJ asserts."  *Id.* (quotation marks and citation omitted).

### B.    Standard for Determining Disability

A claimant seeking disability insurance benefits under Title II must establish disability on or prior to the date last insured.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

1   Determination of the date last insured involves a calculation of the number of quarters the

2   claimant was employed within a certain time frame.  *See* 42 U.S.C. § 423.

3           "To determine whether a claimant is disabled, an ALJ is required to employ a five-step

4   sequential analysis, determining:  (1) whether the claimant is doing substantial gainful activity;

5   (2) whether the claimant has a severe medically determinable physical or mental impairment or

6   combination of impairments that has lasted for more than 12 months; (3) whether the impairment

7   meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual

8   functional capacity, the claimant can still do his or her past relevant work; and (5) whether the

9   claimant can make an adjustment to other work."  *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th

10  Cir. 2014) (quotation marks and citations omitted).  The residual functional capacity ("RFC")

11  referenced at step four is what a claimant can still do despite his or her limitations.  *Id.* at 1160 n.5.

12  "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner

13  at step five."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

**III.   DISCUSSION**

15          Below, the Court summarizes the operative ALJ decision issued October 21, 2022, denying

16  benefits for the period November 15, 2015 through September 26, 2017.  The Court then

17  addresses Plaintiff's challenges to the ALJ's decision and Defendant's response thereto.

**A.       ALJ's Decision issued October 21, 2022**

19          The ALJ determined that Plaintiff acquired sufficient quarters of coverage to remain

20  insured through December 31, 2019.  AR 506.  The ALJ then evaluated Plaintiff's application for

21  benefits for the period November 15, 2015 through September 26, 2017, using the five-step

22  sequential analysis described above.

23          At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity

24  during the period November 15, 2015 through September 26, 2017.  AR 508.  At step two, the

25  ALJ found that during the relevant period Plaintiff had the following severe impairments:

26  "degenerative changes of the first metatarsophalangeal joint; arthritis/hallux limitus, left foot;

27  degenerative disc disease of the lumbar spine with facet arthropathy; irritable bowel syndrome;

28  depressive disorder (unspecified); and anxiety disorder (unspecified)."  AR 508.  During his

1    testimony at the administrative hearing, Plaintiff focused primarily on the impairments relating to

2    his left foot and spine, explaining that his foot hurt all the time and made it difficult to stand for

3    more than 15 minutes, but his spinal pain made it difficult to sit for more than an hour and a half.

4    AR 534.  The ALJ found that Plaintiff also suffered from non-severe impairments, including

5    "alcohol use disorder, gastro esophageal reflux disease (GERD); hiatus hernia, status-post repair;

6    and hypothyroidism."  AR 508.  At step three, the ALJ found that during the relevant period

7    Plaintiff did not have an impairment or combination of impairments that met or medically equaled

8    one of the listed impairments in the regulations.  *Id.* 509.

9         Prior to step four, the ALJ determined that during the period November 15, 2015 through

10   September 26, 2017, Plaintiff had the RFC to perform light work with the following limitations:

> [T]he claimant can lift and/or carry twenty pounds occasionally and ten pounds
> frequently. *The claimant can stand and walk for six hours in an eight-hour
> workday and sit for six hours in an eight-hour workday.* The claimant can
> occasionally climb ramps and stairs; and frequently balance and stoop, but
> occasionally kneel, crouch and crawl; and occasionally climb ladders, ropes, or
> scaffolds. The claimant should avoid concentrated exposure to hazards such as
> unprotected heights and dangerous machinery. In addition, the claimant should
> avoid concentrated exposure to extreme cold. The claimant can perform low stress
> work, which is defined as having the ability to apply commonsense understanding
> to carry out detailed but uninvolved written or oral instructions and to deal with
> problems involving a few concrete variables in or from standardized situations; in
> addition to being unable to perform fast-paced work, i.e., assembly line work and
> could not perform work with high production quotas (such as piecemeal work).

18   AR 511 (emphasis added).  Based on this RFC and the testimony of the VE, the ALJ found at step

19   four that Plaintiff could not perform his past relevant work as a warehouse worker through

20   September 26, 2017.  AR 517.

21        At step five, the ALJ concluded that Plaintiff could perform other jobs that exist in

22   significant numbers in the national economy.  AR 518.  The ALJ cited the VE's testimony that a

23   hypothetical individual of Plaintiff's age, with Plaintiff's education and work experience, and with

24   the RFC described above, could perform the following three occupations:  Housekeeping Cleaner,

25   Dictionary of Occupational Titles ("DOT") 323.687-014; Merchandise Marker, DOT 209.587-

26   034; and Counter Attendant, DOT 311.477-014.  *Id.*  Based on that testimony, the ALJ concluded

27   that Plaintiff was not disabled from November 15, 2015 through September 26, 2017.  *Id.* 518-19.

28

1

**B.    Plaintiff's Challenges to the ALJ's Decision issued October 21, 2022**

2        Plaintiff challenges the ALJ's step five decision on several grounds.  First, Plaintiff asserts

3    that the ALJ improperly rejected medical opinions of treating physician James Kravetz, D.O., and

4    examining physician Paul Martin, Ph.D.  Second, Plaintiff contends that the ALJ improperly

5    discounted Plaintiff's testimony.  Third, Plaintiff argues that the ALJ improperly rejected the lay

6    witness statement provided by Plaintiff's fiancée, Patricia Roe.  Fourth, Plaintiff asserts that one of

7    the limitations included in the RFC – "[t]he claimant can stand and walk for six hours in an eight-

8    hour workday" – is inconsistent with the three occupations relied on by the ALJ to support the

9    finding that Plaintiff was not disabled.  The Court addresses these challenges in turn.

10                        **1.    Medical Evidence**

11        Plaintiff asserts that the ALJ improperly rejected medical opinions of treating physician

12    James Kravetz, D.O., and examining physician Paul Martin, Ph.D.

13                        **a.    Dr. Kravetz**

14        The Court first considers Plaintiff's claim that the ALJ erred in rejecting the opinion of Dr.

15    Kravetz, Plaintiff's treating physician.  The record contains treatment notes from Dr. Kravetz

16    dating back to November 2015.  AR 442-445.  Imaging in March 2016 revealed "[d]egenerative

17    changes of the first metatarsophalangeal joint," and "[d]egenerative disk disease and facet

18    arthropathy at the lower lumbar spine[.]"  AR 465-66.  In a treatment note following an August

19    2016 office visit, Dr. Kravetz noted that Plaintiff had chronic pain in the left foot and ankle and

20    could not stand for more than fifteen minutes.  AR 403-406.  In October 2016, Dr. Kravetz

21    completed a Short-Form Evaluation for Musculoskeletal Impairments," noting that Plaintiff

22    suffered from chronic pain in his left foot and ankle, as well as chronic back pain.  AR 370.  Also

23    in October 2016, Dr. Kravetz completed a "Medical Source Statement – Physical," opining that

24    Plaintiff could lift less than 10 pounds, could stand or walk for less than two hours in an eight-

25    hour workday, and could sit for less than six hours in an eight-hour workday.  AR 372-73.  The

26    ALJ rejected Dr. Kravetz's opinion regarding Plaintiff's limitations when determining that

27    Plaintiff had the RFC to stand and walk for six hours in an eight-hour workday and sit for six

28    hours in an eight-hour workday.  *Id.* 511.

United States District Court
Northern District of California

7

1

"As a general rule, a treating physician's opinion is entitled to substantial weight." *Ford v.*

2   *Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quotation marks and citation omitted).  "Nevertheless,

3   the ALJ need not accept the opinion of a treating physician." *Id*.  A treating physician's opinion

4   that is not contradicted by other record evidence may be rejected for "clear and convincing"

5   reasons supported by substantial evidence in the record.  *Id*.  A treating physician's opinion that is

6   contradicted by another doctor may be rejected for "specific and legitimate" reasons supported by

7   substantial evidence in the record.  *Id*.  "The ALJ need not accept the opinion of any physician,

8   including a treating physician, if that opinion is brief, conclusory, and inadequately supported by

9   clinical findings." *Id*.  In the present case, Dr. Kravetz's opinion was contradicted by other

10  medical evidence in the record, including the opinions of examining physician Farah M. Rana,

11  M.D., and treating podiatrist, Aderonke Ojo, DPM, discussed below.  Because Dr. Kravetz's

12  opinion was contradicted by other medical evidence, the ALJ could reject Dr. Kravetz's opinion

13  by giving specific and legitimate reasons for doing so, supported by substantial evidence in the

14  record.

15      Dr. Rana examined Plaintiff on a single occasion, on December 13, 2016.  AR 382-84.  On

16  examination, Dr. Rana found that Plaintiff had mild lower back tenderness with range of motion in

17  normal limits, and mild tenderness in left ankle among other joints with range of motion in normal

18  limits.  *Id*.  Plaintiff walked with a mild limp, complaining of left ankle pain, but did not use any

19  assistive device.  *Id*.  Based on this examination, Dr. Rana opined that Plaintiff could stand and

20  walk for six hours in an eight-hour workday, and could sit for six hours in an eight-hour workday.

21  AR 382-84.

22      Dr. Ojo, Plaintiff's treating podiatrist, saw Plaintiff on several occasions throughout 2016.

23  Following an office visit in March 2016, Dr. Ojo noted that on examination, Plaintiff had "active

24  painful range of motion" in his left foot and ankle.  AR 420-23.  Dr. Ojo prescribed massage with

25  bio freeze menthol topical gel, physical therapy, and an extra depth orthopedic shoe.  *Id*.  Dr. Ojo

26  also noted, "discuss surgical management joint implant." *Id*.  In June 2016, Dr. Ojo again noted

27  that on examination, Plaintiff had "painful range of motion" with respect to his left foot and ankle.

28  AR 416-19.  Plaintiff reported that the bio freeze gel samples helped for twenty or thirty minutes,

United States District Court
Northern District of California

1    that physical therapy had given a bit of relief, and that he had not been able to get the orthopedic

2    shoe because it was not covered by insurance and he could not afford it.  *Id*.  Dr. Ojo prescribed

3    custom made shoe inserts and stated that if they were not covered by insurance Plaintiff should

4    use over-the-counter shoe inserts.  *Id*.  A treatment note recorded by Dr. Kravetz in August 2016

5    reflected that Dr. Ojo did not feel that Plaintiff needed disability papers filled out because Plaintiff

6    should be able to work.  AR 404.  After an office visit in December 2016, Dr. Ojo found that

7    Plaintiff had "decreased active range of motion" in his left foot and ankle.  AR 387-90.  Dr. Ojo

8    noted that insurance had denied a previously requested surgical consultation, a previously

9    prescribed custom extra depth orthopedic shoe, and previously prescribed custom shoe inserts.  *Id*.

10   Dr. Ojo directed Plaintiff to use bio freeze gel for massage, use warm soaks and ice, and to use

11   over-the-counter shoe inserts.  *Id*.

12        After considering this evidence, the ALJ gave "partial weight" to Dr. Kravetz's opinion,

13   "partial weight" to Dr. Rana's opinion, and "great weight" to Dr. Ojo's opinion.  AR 514-15.

14   Unfortunately, the ALJ did not clearly explain what he meant by assigning those weights to the

15   opinions in question or how those assigned weights affected his rejection of Dr. Kravetz's opinion

16   regarding Plaintiff's stand/walk/sit limitations.

17        Dr. Ojo did not give any opinion as to the number of hours Plaintiff could stand, walk, and

18   sit.  The ALJ highlighted Dr. Ojo's August 2016 comment that he did not believe Plaintiff needed

19   to have disability papers filled out, as well as Dr. Ojo's decision to treat Plaintiff's pain

20   conservatively with bio freeze gel.  *Id*. 515.  Dr. Ojo's August 2016 comment was made at a time

21   when Dr. Ojo was attempting to treat Plaintiff's left foot and ankle pain with a custom orthopedic

22   shoe, custom shoe inserts, and a surgical consultation.  As reflected in Dr. Ojo's December 2016

23   note, Plaintiff was not able obtain any of those prescribed treatments because they were not

24   covered by insurance and Plaintiff could not afford them.  That Dr. Ojo fell back on the

25   conservative treatment Plaintiff could afford, such as bio freeze topical gel, does not provide a

26   specific, legitimate reason for discounting Dr. Kravetz's opinion regarding Plaintiff's limitations.

27   "Disability benefits may not be denied because of the claimant's failure to obtain treatment he

28   cannot obtain for lack of funds."  *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).  The ALJ

United States District Court
Northern District of California

1    indicated that Dr. Ojo's "assessment" – presumably the assessment that Plaintiff was not disabled

2    – was consistent with examination notes, but did not address Dr. Ojo's finding in December 2016

3    that Plaintiff had lost range of motion in his left foot and ankle.  Accordingly, the Court finds that

4    the ALJ's decision to give "great weight" to Dr. Ojo's opinion does not constitute a specific and

5    legitimate reason, supported by substantial evidence, to reject the opinion of Plaintiff's treating

6    physician, Dr. Kravetz, that Plaintiff could stand or walk for less than two hours in an eight-hour

7    workday, and could sit for less than six hours in an eight-hour workday.

8         Unlike Dr. Ojo, Dr. Rana did give an opinion regarding the number of hours Plaintiff could

9    stand, walk, and sit.  Dr. Rana opined that "[t]he claimant's ability to stand and walk in an eight-

10   hour day is six hours with breaks," and that "[h]e can sit for six hours with breaks in an eight-hour

11   day."  AR 384.  Those are exactly the limitations the ALJ included in Plaintiff's RFC.  However,

12   the ALJ did not expressly acknowledge that he was adopting the limitations determined by Dr.

13   Rana over those determined by Dr. Kravetz, nor did he articulate specific reasons for doing so.

14   The ALJ found that Dr. Rana's opinion was supported by her evaluation of Plaintiff, which the

15   ALJ stated showed "normal gait on both sides and no use of assistive device."  AR 515.  The ALJ

16   mischaracterized Dr. Rana's evaluation, which stated that "[t]he claimant walks with a mild limp

17   complaining of pain in his left ankle. He did not use any assistive device."  AR 384.  Dr. Rana did

18   *not* find that Plaintiff had normal gait on both sides.  Nor did she make any reference to the fact

19   that Plaintiff was unable to obtain a prescribed assistive device – a custom orthopedic shoe –

20   because it was not covered by insurance.  The Court finds that the ALJ did not provide specific

21   and legitimate reasons, supported by substantial evidence, for rejecting Dr. Kravetz's opinion

22   regarding Plaintiff's stand/walk/sit limitations.

23        In conclusion, the Court finds that the ALJ erred in rejecting the opinion of Dr. Kravetz,

24   Plaintiff's treating physician, without providing specific and legitimate reasons for doing so,

25   supported by substantial evidence in the record.

26             **b.    Dr. Martin**

27        The Court next considers Plaintiff's claim that the ALJ erred in rejecting the opinion of Dr.

28   Martin, a licensed psychologist who performed a mental health status examination of Plaintiff at

1    the request of the Commissioner.  Dr. Martin's prepared a "Mental Status Assessment Report"

2    dated December 27, 2016, listing DSM 5 diagnoses of Unspecified Depressive Disorder,

3    Unspecified Anxiety Disorder, and Alcohol Use Disorder, Moderate to Severe.  AR 482-85.  Dr.

4    Martin undertook the task "to provide diagnostic and clinical impressions, and to evaluate the

5    claimant's current level of work-related abilities from an emotional and cognitive standpoint."  *Id*.

6    Dr. Martin indicated that Plaintiff was "not significantly limited" or only "mildly limited" with

7    respect to a number of work abilities, such as performing simple and repetitive tasks; performing

8    detailed and complex tasks; and ability to accept instructions from supervisors.  *Id*. 484-85.  Dr.

9    Martin found that Plaintiff was "moderately limited" with respect to the following work abilities:

10   maintaining regular attendance in the work place; ability to perform work activities on a consistent

11   basis; ability to complete a normal workday or workweek without interruptions resulting from the

12   claimants psychiatric condition; and ability to deal with the usual stresses encountered in

13   competitive work environment.  *Id*. 484-85.  Plaintiff argues that the moderate limitations on those

14   work abilities would translate to an unacceptable number of work absences, which would preclude

15   employment in the jobs identified by the VE.  The ALJ did not ask the VE to consider limitations

16   on maintaining regular workplace attendance when posing hypotheticals to the VE.

17       An examining physician's opinion that is contradicted by another doctor may be rejected

18   for "specific and legitimate" reasons supported by substantial evidence in the record.  *Ford*, 950

19   F.3d at 1155.  "An ALJ needs less substantial evidence to reject an examining physician's opinion

20   than to reject a treating physician's opinion."  *Id*.  Dr. Martin's opinion regarding Plaintiff's ability

21   to maintain regular attendance and perform work on a consistent basis was contradicted by the

22   opinions of two state agency psychological consultants, Tawnya Brode, Psy.D., and Kim Morris,

23   Psy.D.  AR 87-88, 106-06.  Both Dr. Brode and Dr. Morris opined that Plaintiff's "ability to

24   perform activities within a schedule, maintain regular attendance, and be punctual within

25   customary tolerances" was "Not significantly limited."  *Id*.  Because Dr. Martin's opinion was

26   contradicted by other medical evidence, the ALJ could reject Dr. Martin's opinion by giving

27   specific and legitimate reasons for doing so, supported by substantial evidence in the record.

28       The ALJ found that the opinions of Dr. Brode and Dr. Morris were entitled to "great

United States District Court
Northern District of California

11

weight" as "supported by their longitudinal review of the record and explanation of the evidence." AR 514.  The ALJ found that Plaintiff's mental status examination was essentially unremarkable, and that his prescriptions appeared to be effectively treating his mental health issues.  *Id.*  The ALJ granted only "partial weight" to Dr. Martin's competing opinion, stating that Dr. Martin's own mental evaluation of Plaintiff revealed virtually normal findings, and that assessment was supported by Plaintiff's own testimony regarding his activities of daily living, which did not reveal any significant mental impairment.  *Id.* 515.  The ALJ's reliance on the opinions of Dr. Brode and Dr. Morris, which expressly found that Plaintiff had the ability to maintain regular attendance and perform work on a consistent basis, constitutes a specific and legitimate reason supported by substantial evidence for discounting Dr. Martin's opinion suggesting that Plaintiff did not have such ability.

Plaintiff argues that the ALJ's explanation for giving only partial weight to Dr. Martin's opinion did not adequately address Plaintiff's testimony regarding the limitations on his activities of daily living, for example, testimony that his fiancée did most of the household chores, that he could drive only seven to ten miles and could not get out of the car to do grocery shopping, and that he spent much of the day resting and watching television.  Plaintiff does not explain why the ALJ would have considered Plaintiff's testimony regarding his *physical* limitations when determining what weight to give Dr. Martin's opinion regarding Plaintiff's *mental* status.  As noted above, Dr. Martin was retained to provide a mental status assessment based on an evaluation of Plaintiff's work-related abilities "from an emotional and cognitive standpoint."  AR 484.  The ALJ properly limited his discussion of Dr. Martin's opinion to evidence regarding Plaintiff's mental status.

Accordingly, the Court finds that the ALJ did not err in discounting the opinion of Dr. Martin.

### 2.    Plaintiff's Testimony

Plaintiff contends that the ALJ improperly discounted Plaintiff's testimony regarding the extent of his pain and related limitations.  Specifically, Plaintiff asserts that the ALJ did not address his testimony that he was limited to standing and walking for short periods of time and

12

that his fiancée had to do most of the household tasks.  *See* Pl.'s Mot. at 15, ECF 16.  Plaintiff testified that he was able to do stand or walk for about fifteen minutes at a time, could do some dishes, and could drive his fiancée to a grocery store seven to ten miles away.  AR 539-40, 542-43.  Plaintiff testified that he could not do much more with respect to daily chores; for example, he could not go into a grocery store to do the shopping.  *Id*.  Plaintiff contends that the limitations he described in his testimony are inconsistent with the RFC determined by the ALJ, in particular the portion of the RFC finding that Plaintiff could stand and walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday.

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis."  *Ghanim*, 763 F.3d at 1163 (quotation marks and citation omitted).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Id*. (quotation marks and citation omitted).  If the claimant has done so, and there is no evidence of malingering, the ALJ may reject the claimant's testimony about the severity of the symptoms only for "specific, clear and convincing reasons."  *Id*. (quotation marks and citation omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quotation marks and citation omitted).  "An ALJ may consider a range of factors in assessing credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities."  *Id.*

In the present case, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  AR 516.  The ALJ did not make a finding of malingering.  *Id*.  Accordingly, the ALJ could reject Plaintiff's testimony only for only for specific, clear, and convincing reasons.  The Court finds that the ALJ did not provide the requisite specific, clear, and convincing reasons in this case, as discussed below.

1      The ALJ used only boilerplate generalities in rejecting Plaintiff's pain testimony, stating

2   that:

3         [T]he claimant's statements concerning the intensity, persistence and limiting
          effects of these symptoms are not entirely consistent with the medical evidence and
4         other evidence in the record for the reasons explained in this decision. The above
          residual functional capacity assessment is supported by the objective medical
5         evidence contained in the record, which fails to corroborate the severity of the
          symptoms alleged.
6

7    AR 516-17.  The ALJ went on the state that he "accounted for" Plaintiff's impairments in the

8   RFC.  *Id.* 517.  The Ninth Circuit had held that these types of general statements are not sufficient

9   to meet the applicable "specific, clear, and convincing" standard, and has held that it is error for an

10  ALJ to make "only a single general statement that the claimant's statements concerning the

11  intensity, persistence and limiting effects of these symptoms are not credible to the extent they are

12  inconsistent with the above residual functional capacity assessment, without identifying

13  sufficiently specific reasons for rejecting the testimony, supported by evidence in the case record."

14  *Brown-Hunter*, 806 F.3d at 493 (quotation marks and citation omitted).

15      The ALJ did note that Plaintiff pursued only conservative treatments involving

16  medications.  AR 517.  The Ninth Circuit has held that "evidence of 'conservative treatment' is

17  sufficient to discount a claimant's testimony regarding severity of an impairment."  *Parra v.*

18  *Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).  As discussed above, however, Plaintiff was precluded

19  from pursuing more aggressive treatment for his left foot and ankle pain, because his insurance

20  company denied coverage for a custom orthopedic shoe, custom shoe inserts, or a surgical

21  consultation.  Plaintiff's inability to afford more aggressive treatment does not justify denial of

22  disability benefits.  *See Gamble*, 68 F.3d at 321.

23      The ALJ did give some specifics when he characterized Plaintiff's activities of daily living

24  as "robust."  AR 517.  The ALJ indicated that Plaintiff was able to trim trees, take care of his dog,

25  drive, shop, and engage in other activities suggesting that he would be capable of basic work-like

26  tasks within the parameters of the RFC determined by the ALJ.  *Id.*  In the Court's view, the ALJ's

27  characterization of Plaintiff's daily life activities is not fairly supported by the record.  For

28  example, Plaintiff testified that he liked to spend time with his dog but that his fiancée actually

United States District Court
Northern District of California

14

1   walked the dog. *Id.* 539-40. Plaintiff testified that he drove his fiancée to the grocery store but

2   did not actually get out of the store to do the shopping. *Id.*

3        The Court finds that the ALJ erred in discounting Plaintiff's testimony about the severity

4   of his pain symptoms without providing "specific, clear and convincing reasons."

### 3.   Lay Witness Testimony of Plaintiff's Fiancée

6        Plaintiff next argues that the ALJ improperly rejected the lay witness statement provided

7   by Plaintiff's fiancée, Patricia Roe. "Lay testimony as to a claimant's symptoms or how an

8   impairment affects the claimant's ability to work is competent evidence that the ALJ must take

9   into account." *Ghanim*, 763 F.3d at 1165 (quotation marks and citation omitted). "An ALJ may

10  reject a lay witness's testimony only upon giving a reason germane to that witness." *Id.* (quotation

11  marks and citation omitted). This "standard is much lower" than the standard governing rejection

12  of the claimant's testimony. *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017).

13       Ms. Roe submitted a "Function Report – Adult – Third Party" on October 24, 2016. AR

14  225-32. Ms. Roe stated that Plaintiff could not stand for more than ten or fifteen minutes due to

15  foot pain, could not walk his dog, could not go hiking anymore, needed reminders to take

16  medications, and did not get along with others. *Id.* Ms. Roe checked numerous boxes indicating

17  that Plaintiff's conditions affected: lifting, walking, stair climbing, squatting, sitting, following

18  instructions, bending, kneeling, memory, standing, completing tasks, and getting along with

19  others. *Id.* 230. Finally, Ms. Roe indicated that Plaintiff cleaned up after his dog, did some yard

20  work, put dishes away, and swept the floor. *Id.* 227. Ms. Roe also indicated that Plaintiff could

21  drive a car, handle his money, spend time with his grandchildren, spend limited time riding a

22  bicycle, and take care of his own personal care. *Id.* 225-32.

23       The ALJ stated that he gave "limited weight" to Ms. Roe's comments regarding Plaintiff's

24  exertional limitations, because she is a non-medical source. AR 516. It is unclear why Ms. Roe's

25  statements as to what Plaintiff could and could not do were entitled to less weight because she was

26  not a medical source. Even assuming that the ALJ properly credited the medical sources he relied

27  on elsewhere in the decision, in particular the opinions of Dr. Rana and Dr. Ojo, regarding

28  Plaintiff's exertional limitations, the ALJ did not provide sufficient reasons for discounting Ms.

United States District Court
Northern District of California

15

Roe's statements regarding Plaintiff's activities of daily living.  The ALJ stated that he gave "more weight" to Ms. Roe's account of Plaintiff's daily activities because of the length of their relationship.  *Id*.  However, the ALJ focused on Ms. Roe's statements regarding the activities of daily living that Plaintiff could perform independently.  *Id*.  The ALJ completely ignored Ms. Roe's statements regarding activities of daily living that Plaintiff could *not* perform independently or at all.

Accordingly, even under the lower standard applicable to lay witnesses, the Court finds that the ALJ erred in discounting Ms. Roe's statement without a sufficient basis.

**4.      Limitation to Standing/Walking for Six Hours in Eight-Hour Workday**

As noted above, the ALJ relied on the VE's testimony that a hypothetical individual of Plaintiff's age, with Plaintiff's education and work experience, and with the RFC determined by the ALJ, could work as a Housekeeping Cleaner, DOT 323.687-014; a Merchandise Marker, DOT 209.587-034; or a Counter Attendant, DOT 311.477-014.  AR 518.  Based on that testimony, the ALJ found that Plaintiff was not disabled.  *Id.* 519.  Plaintiff asserts that in fact the three jobs identified by the VE are not consistent with the RFC determined by the ALJ, specifically, the portion of the RFC limiting Plaintiff to standing or walking for six hours in an eight-hour workday.

Plaintiff correctly points out that the ALJ's decision simply ignored the VE's clarification that a hypothetical individual with Plaintiff's age, education, and work experience, who is limited to standing or walking for six hours in an eight-hour workday, could *not* perform the jobs of Housekeeping Cleaner or Counter Attendant.  AR 551.  However, as Defendant points out, the VE testified that approximately half of the 131,000 positions available for the third job, Merchandise Marker, could be performed in a sitting position consistent with the RFC in this case.  *Id*. 550-51.  The VE also identified other positions that could be performed with the six hour standing and/or walking limitation, including a router and order caller, totaling an additional 43,000 positions.  *Id*. 554-55.  Accordingly, while Plaintiff has identified errors in the ALJ's reliance on the VE's testimony with respect to the Housekeeping Cleaner and Counter Attendant positions, the VE's testimony regarding the Merchandise Marker position, as well as the router and order caller

United States District Court
Northern District of California

1    positions, still would be adequate to support the ALJ's finding of not disabled *if* the RFC

2    determined by the ALJ were supported by substantial evidence in the record.

3         Plaintiff cites to non-DOT sources in support of his position that the occupations identified

4    by the VE are inconsistent with the RFC's stand/walk/sit limitations.  Non-DOT sources "are not

5    conclusive regarding the standing/walking requirements" for jobs identified by a VE.  *Twila D. B.*

6    *v. Kijakazi*, No. 2:20-CV-06304-AFM, 2022 WL 425936, at *7 (C.D. Cal. Feb. 10, 2022).

7    Moreover, "as numerous courts in this Circuit have concluded, a lay assessment of data from

8    [sources other than the DOT] fails to undermine the reliability of the vocational expert's

9    testimony."  *Kevin E. v. Saul*, No. 2:19-CV-09831-JC, 2021 WL 134584, at *6 (C.D. Cal. Jan. 14,

10    2021).   Accordingly, the Court finds Plaintiff's challenge to the VE's testimony on these grounds

11    to be without merit.  The Court observes that Plaintiff abandoned the argument in his final brief.

12         As discussed above, however, the RFC determined by the ALJ is not supported by

13    substantial evidence and thus the testimony of the VE based on the unsupported RFC does not

14    provide an adequate basis for the ALJ's determination that Plaintiff was not disabled.

15               **5.**       **Remand for Payment of Benefits is Appropriate**

16         The Court concludes that the ALJ erred in several respects when denying Plaintiff's

17    application for benefits for the period from November 15, 2015 through September 26, 2017.

18    Specifically, the ALJ erred in:  rejecting the opinion of Dr. Kravetz, Plaintiff's treating physician,

19    without providing specific and legitimate reasons for doing so supported by substantial evidence

20    in the record; discounting Plaintiff's testimony about the severity of his symptoms without

21    providing specific, clear and convincing reasons; and discounting Ms. Roe's statement without a

22    sufficient basis.

23         Having concluded that the ALJ committed these errors, the Court must decide whether the

24    errors are harmless and, if not, the appropriate remedy.  "An error is harmless only if it is

25    inconsequential to the ultimate nondisability determination, or if despite the legal error, the

26    agency's path may reasonably be discerned."  *Brown-Hunter*, 806 F.3d at 494 (quotation marks

27    and citations omitted).  Here, the errors were not harmless, because they were key to the step five

28    determination upon which the ALJ based his denial of benefits.  The Court therefore must

1    determine the appropriate remedy.

2          Plaintiff requests remand for immediate payment of benefits.  A remand for an immediate

3    award of benefits may be appropriate in the rare circumstances in which the following three

4    requirements are met:  (1) "the ALJ has failed to provide legally sufficient reasons for rejecting

5    evidence, whether claimant testimony or medical opinion"; (2) "the record has been fully

6    developed and further administrative proceedings would serve no useful purpose"; and (3) "if the

7    improperly discredited evidence were credited as true, the ALJ would be required to find the

8    claimant disabled on remand." *Brown-Hunter*, 806 F.3d at 495 (quotation marks and citation

9    omitted).  Even if all three requirements are satisfied, the Court "retain[s] flexibility in

10   determining the appropriate remedy." *Id*. (quotation marks and citation omitted).

11         The Court finds that all three requirements are met here.  First, the ALJ failed to provide

12   legally sufficient reasons to reject Dr. Kravetz's opinion, Plaintiff's testimony, and Ms. Roe's

13   statement.  Second, the record has been fully developed over the course of two rounds of

14   administrative proceedings, and further administrative proceedings would not serve any useful

15   purpose.

16         Third, if the improperly discredited evidence were accepted, the ALJ would be required to

17   find Plaintiff disabled on remand.  Dr. Kravetz opined that Plaintiff could stand or walk for less

18   than two hours in an eight-hour workday, and could sit for less than six hours in an eight-hour

19   workday.  Plaintiff's testimony was consistent with Dr. Kravetz's opinion.  It is undisputed that,

20   accepting the limitations set forth by Dr. Kravetz, Plaintiff would have been limited to sedentary

21   work.  Plaintiff argues that if limited to sedentary work, he would have been disabled as of his

22   amended alleged onset date under Grid Rule 201.10.  *See* 20 C.F.R. § 404, Subpart P, Appendix 2,

23   Rule 201.10.  Grid Rule 201.10 mandates a finding of disabled for a claimant who is closely

24   approaching advanced age, has limited or less than a high school education, is skilled or

25   semiskilled without transferable skills, and is limited to sedentary work.  *See id.*  The ALJ did not

26   make an express finding whether Plaintiff had transferable job skills.  AR 517-18.  However, the

27   record reflects prior work experience only as a warehouse worker.  Other courts have accepted VE

28   testimony there are no transferable skills from past work as a warehouse worker.  *See Pierce v.*

*Colvin*, No. 1:14-CV-01687-BAM, 2016 WL 3407597, at *2 (E.D. Cal. June 20, 2016).

Defendant does not argue that Plaintiff had transferable job skills or that Grid Rule 201.10 would not apply if Plaintiff were limited to sedentary work.  Defendant Commissioner has the burden to prove disability at step five.  *See Bray*, 554 F.3d at 1222.  Defendant has not met that burden here.

Accordingly, the Court finds it appropriate to remand for payment of benefits rather than requiring Plaintiff to go through a third round of administrative proceedings.

**IV.   ORDER**

(1)     Plaintiff's motion for summary judgment is GRANTED;

(2)     Defendant's cross-motion for summary judgment is DENIED;

(3)     The Commissioner's decision is REVERSED and the case is REMANDED for payment of benefits; and

(4)     This order terminates ECF 16 and 22.

Dated:  February 27, 2024

_____
BETH LABSON FREEMAN
United States District Judge